PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:     (213) 687-5000
Facsimile:     (213) 687-5600

SCOTT D. MUSOFF (*pro hac vice* forthcoming)
scott.musoff@skadden.com
ROBERT A. FUMERTON (*pro hac vice* forthcoming)
robert.fumerton@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

Attorneys for Defendants
ZTO Express (Cayman) Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL McGRATH, individually and on behalf of all others similarly situated, | CASE NO.: |
| Plaintiff, | CLASS ACTION |
| v. | **NOTICE OF REMOVAL** |
| ZTO EXPRESS (CAYMAN) INC., <u>et al.</u>, | |
| Defendants. | |

1

## <u>TABLE OF CONTENTS</u>

2

STATEMENT OF THE CASE.................................................................................. 1

      A.    THIS ACTION IS REMOVABLE UNDER 28 U.S.C. § 1441(a) BECAUSE THE COURT HAS ORIGINAL JURISDICTION OVER QUESTIONS OF FEDERAL SECURITIES LAW ...................................... 3

      B.    THE REQUIREMENTS FOR REMOVAL ARE SATISFIED ................... 4

      C.    THE SLUSA AMENDMENTS TO THE SECURITIES ACT AUTHORIZE REMOVAL OF THE STATE COURT ACTION ................. 4

      D.    A MOTION TO REMAND SHOULD BE DENIED OR, AT THE VERY LEAST, STAYED PENDING THE SUPREME COURT'S DECISION IN CYAN ................................................................................ 9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

Book v. ProNAi Therapeutics, Inc.,
   No. 5:16-CV-07408-EJD,
   2017 WL 2533664 (N.D. Cal. June 12, 2017), appeal filed,
   No. 17-16323 (9th Cir. June 25, 2017), and appeal filed sub nom. Gallas v. ProNAi
   Therapeutics, Inc., No. 17-16325 (9th Cir. June 27, 2017) .................................. 8

Bowden v. Contract Callers, Inc.,
   No. 16-CV-06171-MMC,
   2017 WL 1732017 (N.D. Cal. Apr. 5, 2017) ...................................................... 11

In re Fannie Mae 2008 Securities Litigation,
   No. 08-cv-7831 (PAC),
   2009 WL 4067266 (S.D.N.Y. Nov. 24, 2009) ....................................................... 8

Hung v. iDreamSky Technology Ltd.,
   No. 15-CV-2514 (JPO) et seq.,
   2016 WL 299034 (S.D.N.Y. Jan. 25, 2016) ......................................................... 8

Iron Workers District Council of New England Pension Fund v. Moneygram International,
   Inc.,
   204 F. Supp. 3d 784 (D. Del. 2016)........................................................... 5, 6, 7, 8

Iron Workers Mid-South Pension Fund v. Terraform Global, Inc.,
   No. 15-cv-6328-BLF,
   2016 WL 827374 (N.D. Cal. Mar. 3, 2016) ......................................................... 6

Knox v. Agria Corp.,
   613 F. Supp. 2d 419 (S.D.N.Y. 2009)........................................................... 3, 6, 8

Olberding v. Avinger, Inc.,
   No. 17-CV-03398-CW,
   2017 WL 3141889 (N.D. Cal. July 21, 2017) ...................................................... 8

Lapin v. Facebook, Inc.,
   Nos. C-12-3195 MMC et seq.,
   2012 WL 3647409 (N.D. Cal. Aug. 23, 2012) .................................................... 8

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,
   547 U.S. 71 (2006).............................................................................................. 5, 6

Northumberland County Retirement System v. GMX Resources, Inc.,
   810 F. Supp. 2d 1282 (W.D. Okla. 2011) ........................................................... 7

Patel v. Terraform Global, Inc.,
   No. 16-CV-00073-BLF,
   2016 WL 827375 (N.D. Cal. Mar. 3, 2016) ......................................................... 8

Perryman v. Litton Loan Servicing, LP,
   No. 14-CV-02261-JST,
   2016 WL 1258584 (N.D. Cal. Mar. 30, 2016)...................................................... 9

ii

Plymouth County Retirement System v. Model N, Inc.,
    No. 14-CV-04516-WHO,
    2015 WL 65110 (N.D. Cal. Jan. 5, 2015) ................................................................... 8

Ramirez v. Trans Union, LLC,
    No. 12-CV-00632-JSC,
    2015 WL 6159942 (N.D. Cal. June 22, 2015) ........................................................ 9

Reyes v. Zynga Inc.,
    No. C 12-05065 JSW,
    2013 WL 5529754 (N.D. Cal. Jan. 23, 2013) ........................................................ 8

Rovner v. Vonage Holdings Corp.,
    No. 07–178 (FLW),
    2007 WL 446658 (D. N.J. Feb. 7, 2007) ........................................................... 7, 8

Rubin v. Pixelplus Co.,
    No. 06-CV-2964 (ERK),
    2007 WL 778485 (E.D.N.Y. Mar. 13, 2007) ........................................................ 8

Schwartz v. Concordia International Corp.,
    No. 16-CV-6576 (NGG) (CLP),
    2017 WL 2559777 (E.D.N.Y. June 12, 2017) ...................................................... 8

Unschuld v. Tri-S Security Corp.,
    No. 1:06-CV-02931-JEC,
    2007 WL 2729011 (N.D. Ga. Sept. 14, 2007) ................................................. 5, 7

Wunsch v. American Realty Capital Properties,
    No. JFM-14-4007,
    2015 WL 2183035 (D. Md. Apr. 14, 2015) ......................................................... 8

**STATUTES**

15 U.S.C. § 77a ............................................................................................................ 1

15 U.S.C. § 77p(b) ...................................................................................................... 8

15 U.S.C. § 77p(b)(1)-(2) ........................................................................................... 5

15 U.S.C. § 77p(b)-(c) ................................................................................................. 7

15 U.S.C. § 77p(c) ............................................................................................. 1, 2, 4, 6

15 U.S.C. § 77p(f)(2) ................................................................................................... 6

15 U.S.C. § 77p(f)(3) ................................................................................................... 6

15 U.S.C. § 77r(b)(1) ................................................................................................ 6, 7

15 U.S.C. § 77v ........................................................................................................... 7

15 U.S.C. § 77v(a) ................................................................................................... 2, 5

28 U.S.C. § 1331 ...................................................................................................... 2, 3

28 U.S.C. § 1441 ................................................................................................ 1, 2, 4

28 U.S.C. § 1441(a) ..................................................................................................... 3

28 U.S.C. § 1446(a) ..................................................................................................... 4

28 U.S.C. § 1446(b) .................................................................................................. 3, 4

28 U.S.C. § 1446(d) ..................................................................................................... 4

## RULES

Fed. R. Civ. P. 11 ........................................................................................................ 4

## OTHER AUTHORITIES

Brief for U.S. as Amicus Curiae, Cyan, Inc. v. Beaver County Employees Retirement Fund,
    No. 15-1439, 2017 WL 2333893 (U.S. May 23, 2017) ............................................ 5, 7, 8, 10

Petition for Writ of Certiorari, Cyan, Inc. v. Beaver County Employees Retirement Fund,
    No. 15-1439, 2016 WL 3040512 (U.S. May 24, 2016) .................................................... 2, 10

Order Granting Defendants' Request for Stay, City of Birmingham Retirement and Relief
    System, v. ZTO Express (Cayman) Inc.,
    No. 2:17-CV-1091-RDP, 2017 WL 3750660 (N.D. Ala. Aug. 29, 2017) ................... 3, 9, 10

NOTICE OF REMOVAL

**TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant ZTO Express (Cayman) Inc. ("ZTO") hereby files this Notice of Removal to remove this putative class action from the Superior Court of California, San Mateo County to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441 and the removal provision of the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 77p(c).   The grounds for removal are the following:

## STATEMENT OF THE CASE

1.      On or about August 21, 2017, Michael McGrath ("Plaintiff") filed a putative class action complaint (the "Complaint"), in the Superior Court for the County of San Mateo, California, Case No. 17-CIV-03805, under the caption <u>Michael McGrath v. ZTO Express (Cayman) Inc., et al.</u> (the "State Court Action").[1]   The Complaint alleges only violations of the federal Securities Act of 1933, 15 U.S.C. § 77a, <u>et seq.</u> (the "Securities Act"), specifically Sections 11, 12(a)(2) and 15. ZTO has not entered an appearance in the State Court Action, filed any motion in that action, nor answered, moved, or otherwise responded to the Complaint.

2.      To date, four putative class actions asserting claims under the federal Securities Act, including this case, have been commenced concerning American Depository Shares ("ADSs") purchased in connection with ZTO's October 2016 initial public offering (the "IPO" or "Offering").   This State Court Action is the fourth action to be filed.   The other actions are: <u>City of Birmingham Retirement & Relief System v. ZTO Express (Cayman) Inc. et al.</u>, filed in Alabama state court on May 16, 2017 and removed to the United States District Court for the Northern District of Alabama on June 28, 2017 ("Alabama Action"); <u>Rustem Nurlybayev v. ZTO Express (Cayman) Inc. et al.</u>, filed in the United States District Court for the Southern District of New York on August 14, 2017; and <u>Jian Guo v. ZTO Express (Cayman) Inc. et al.</u>, filed in Superior Court for

---

[1] A true and correct copy of the complaint is attached hereto as Exhibit A.

the County of San Mateo, California on August 11, 2017, which is also being be removed to this Court.

3.     ZTO now removes the State Court Action to this Court (i) under 28 U.S.C. § 1441 because this Court has original federal question jurisdiction under 28 U.S.C. § 1331 and Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) ("Section 22"); and (ii) under Section 16(c) of the Securities Act, as amended by the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 77p(c) ("Section 16(c)"), because this case is removable as a "covered class action" under SLUSA since Plaintiff seeks damages on behalf of more than 50 people or prospective class members or on a representative basis on behalf of Plaintiff and other unnamed parties allegedly similarly situated, and Plaintiff seeks such damages in connection with a "covered security," that is, a security traded nationally and listed on a regulated national exchange.

4.     Any motion for remand should be denied or, at the very least, stayed pending the U.S. Supreme Court's resolution of <u>Cyan, Inc. v. Beaver County Employees Retirement Fund</u>, No. 15-1439, which is to be argued in the upcoming term.  Some federal district courts have concluded that Section 22(a) grants concurrent jurisdiction to state and federal courts over covered class actions brought under the Securities Act.  Such courts have concluded that Section 16(c) allows only covered class actions asserting state law claims, not federal law claims, to be removed to federal court.  On June 27, 2017, following submission of briefs by the U.S. government (at the Supreme Court's invitation) urging the Court to take up the issue, the Supreme Court granted the certiorari petition in <u>Cyan</u> on the question "[w]hether state courts lack subject matter jurisdiction over covered class actions that allege only [Securities] Act claims."  Pet. for Writ of Cert., <u>Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund</u>, No. 15-1439, 2016 WL 3040512, at *i (U.S. May 24, 2016); <u>see also</u> <u>Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund</u>, 127 S. Ct. 2325 (2017) (June 27, 2017 order granting petition, attached hereto as Exhibit B).  Because the <u>Cyan</u> decision will be dispositive of any motion to remand here, ruling on such a motion before the Supreme Court rules would be premature.  Indeed, on August 29, 2017, the court in the Northern District of Alabama, addressing a virtually identical case asserting the same claims against the same defendants as here entered a stay of the Alabama Action for just that reason.  (<u>See</u> Order Granting Defs.' Req. for Stay, <u>City of</u>

1   <u>Birmingham Ret. & Relief Sys. v. ZTO Express (Cayman) Inc., et al.</u>, No. 2:17-CV-1091-RDP

2   (N.D. Ala. Aug. 29, 2017) (ECF No. 35 and attached hereto as Exhibit D).)

3       **A.    <u>THIS ACTION IS REMOVABLE UNDER 28 U.S.C. § 1441(a) BECAUSE
        THE COURT HAS ORIGINAL JURISDICTION OVER QUESTIONS OF</u>**

4       **<u>FEDERAL SECURITIES LAW</u>**

5       5.    The State Court Action is within the original jurisdiction of this Court under 28

6   U.S.C. § 1331 because it includes claims arising under the laws of the United States.  Specifically,

7   the Complaint purports to assert claims against Defendants for violations of Sections 11, 12(a)(2),

8   and 15 of the federal Securities Act.  Plaintiff alleges that ZTO's registration statement and

9   prospectus issued in connection with ZTO's offering of ADSs in October 2016 contained "untrue

10  statements of material fact" and "omitted [] [] material facts."  (Ex. A, Compl. ¶ 35.)  These federal

11  law claims are the only claims asserted in the complaint.

12      6.    Moreover, Section 22(a) of the Securities Act provides that the

13          district courts of the United States . . . shall have jurisdiction of offenses
            and violations under [the Securities Act] . . . and concurrent with State and
14          Territorial Courts, except as provided in [Section 16] of this title with
            respect to covered class actions, of all suits in equity and actions at law
15          brought to enforce any liability or duty created by [the Securities Act].

16

17  As discussed further below, the exception within Section 22(a)'s jurisdictional provision excludes

18  covered class actions raising Securities Act claims from concurrent jurisdiction, thereby granting

19  jurisdiction to federal courts alone.  See <u>Knox v. Agria Corp.</u>, 613 F. Supp. 2d 419, 425 (S.D.N.Y.

20  2009).

21      7.    Because the State Court Action is a civil action over which this Court has original

22  jurisdiction, it is removable under 28 U.S.C. § 1441(a), which provides, "any civil action brought

23  in a State court of which the district courts of the United States have original jurisdiction, may be

24  removed . . . to the district court of the United States for the district and division embracing the

25  place where such action is pending."

26

27

28

**B.**      **THE REQUIREMENTS FOR REMOVAL ARE SATISFIED**

8.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is being filed within thirty days of service, which has yet to occur, as required by 28 U.S.C. § 1446(b).  See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354 (1999).[2]

9.      Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders in the State Court Action are attached hereto as Exhibit C, except for the Complaint, which is attached separately hereto as Exhibit A.

10.      The Northern District of California is the district in which the Superior Court for the County of San Mateo, California (where the State Court Action is pending) is located.

11.      In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, ZTO will give written notice to all adverse parties and will file a copy of this Notice of Removal with the Superior Court for the County of San Mateo, California.

12.      This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

13.      Accordingly, the State Court Action is removable to this Court under 28 U.S.C. § 1441 and 15 U.S.C. § 77p(c).

**C.**      **THE SLUSA AMENDMENTS TO THE SECURITIES ACT AUTHORIZE REMOVAL OF THE STATE COURT ACTION**

14.      Congress enacted SLUSA to "prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [Private Securities Litigation Reform Act ("PSLRA")]," and "sought to accomplish that goal by creating 'national standards for securities class action lawsuits involving nationally traded securities.'"  Br. for U.S. as Amicus Curiae, Cyan, 2017 WL 2333893, at *1 (U.S. May 23, 2017) (quoting SLUSA § 2(5),

---

[2] As of the date of filing this Notice of Removal, none of ZTO nor the individual Defendants in this action, Meisong Lai, Jianmin (James) Guo, Jianfa Lai, Jilei Wang, Xiangliang Hu, Baixi Lan, Xing Liu, or Frank Zhen Wei, has been served with the summons and complaint.  Further, without waiver of any rights, undersigned counsel represents that it has conferred with counsel for the Underwriter Defendants, and the Underwriter Defendants consent to the removal of this action although none has been served with a summons and complaint.  In consenting to removal, the Underwriter Defendants waive no rights to challenge the validity of future service and moreover reserve and do not waive any and all Rule 12 defenses, including but not limited to lack of in personam jurisdiction.

112 Stat. 3227 and <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit</u>, 547 U.S. 71, 82 (2006)). As Congress recognized that class action plaintiffs might attempt to circumvent the national standards established by the PSLRA by filing securities class actions in state court, "SLUSA therefore amended the [Securities] Act to permit removal of such actions to federal court." <u>Id.</u> at *3. Congress's clear legislative intent was to "ensure that federal courts, not state courts, were the fora for litigation of class security fraud claims." <u>Unschuld v. Tri-S Sec. Corp.</u>, 2007 WL 2729011, at *8 (N.D. Ga. Sept. 14, 2007).

15.     Although Section 22(a) of the Securities Act contains a provision that bars the removal of Securities Act cases from state courts of "competent jurisdiction," the removal bar does not apply to covered class actions.  In particular, as noted above, SLUSA amended Section 22(a) to deprive state courts of jurisdiction, "as provided in [Section 16] of this title with respect to covered class actions," over actions "brought to enforce any liability or duty created by this subchapter." 15 U.S.C. §77v(a).  Thus, as state courts are not courts of "competent jurisdiction" "with respect to covered class actions" brought to enforce provisions of the Securities Act, the removal bar in Section 22 does not apply and removal to federal court is permitted.  <u>Id.</u>; <u>see</u> <u>Iron Workers Dist. Council of New England Pension Fund v. Moneygram Int'l, Inc.</u>, 204 F. Supp. 3d 784, 790 (D. Del. 2016) (concluding that the removal bar does not apply to class actions asserting Securities Act claims).

16.     Many district courts have concluded that SLUSA's amendment to Section 22(a) deprived state courts of concurrent jurisdiction only over those "covered class actions" described in Section 16(b), which refers to covered class actions "based upon the statutory or common law of any State or subdivision thereof . . . alleging" either "an untrue statement or omission of material fact" or "that the defendant used or employed any manipulative or deceptive device . . . in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b)(1)-(2). Thus, such courts have concluded that the amendment to Section 22(a) removes state court jurisdiction only for state law claims, as opposed to federal Securities Act claims.  <u>See, e.g.</u>, <u>Iron Workers Mid-South Pension Fund v. Terraform Glob., Inc.</u>, 2016 WL 827374, at *3 (N.D. Cal. Mar. 3, 2016).

17. However, the better interpretation is that Section 22(a) as amended by SLUSA deprives state courts of jurisdiction over all "covered class actions" brought under federal law. See Moneygram, 204 F. Supp. 3d at 790. It is not reasonable to conclude that Congress intended SLUSA's amendment to Section 22(a) to remove state court jurisdiction only over covered class actions arising under state law. This interpretation "creates a jurisdictional anomaly because it has the effect of prohibiting state securities fraud claims in state court, while allowing federal securities fraud class actions to be litigated there." Knox, 613 F. Supp. 2d at 423. Moreover, Section 22(a) as a whole only addresses jurisdiction over federal Securities Act claims; that is its purpose. It does not concern jurisdiction over state law claims of any kind. Thus, Section 22(a) cannot contain an exception to the scheme of concurrent jurisdiction over state law covered class actions when it does not grant concurrent jurisdiction over such actions to begin with.

18. In addition, Section 22(a) contains a provision barring removal of class actions filed in state court except, "as provided in [Section 16(c)]." 15 U.S.C. § 77v(a). Section 16(c) of the Securities Act provides that "[a]ny covered class action brought in any State court involving a covered security, as set forth in [Section 16(b)], shall be removable to the Federal district court for the district in which the action is pending . . . ." 15 U.S.C. § 77p(c); see also Dabit, 547 U.S. at 83 n.7 ("[Section 16(c)] of the statute makes all 'covered class actions' filed in state court removable to federal court." (citation omitted)). "A 'covered class action' is a lawsuit in which damages are sought on behalf of more than 50 people." Dabit, 547 U.S. at 83; 15 U.S.C. § 77p(f)(2). "A 'covered security' is one traded nationally and listed on a regulated national exchange." Dabit, 547 U.S. at 83; 15 U.S.C. §§ 77r(b)(1), 77p(f)(3).

19. Here, the State Court Action is a "covered class action . . . involving a covered security." The State Court Action is a covered class action because Plaintiff seeks to recover damages on behalf of more than 50 people or prospective class members or on a representative basis on behalf of Plaintiff and other unnamed parties allegedly similarly situated. See 15 U.S.C. § 77p(f)(2)(i). Specifically, Plaintiff alleges that "members of the Class are so numerous that joinder of all members is impracticable" and "plaintiff believes that there are hundreds of members in the proposed Class." (Ex. A, Compl. ¶ 51.) Moreover, the securities at issue here, ADSs, are

covered securities within the meaning of SLUSA because they are traded on the New York Stock Exchange.  See 15 U.S.C. § 77r(b)(1).  Therefore, the State Court Action satisfies the requirements of Section 16(c) and is removable.

20.     If Section 16(c) is interpreted to permit removal only of state law claims, as some district courts have concluded, it would be entirely superfluous because it would not create an exception to the removal bar in Section 22(a) as it purports to do.  Section 22(a) bars removal from state courts of competent jurisdiction cases arising under the Securities Act.  As Section 22(a) never barred removal of state law covered class actions in the first place—nor did it have any reason to, given that it is part of the Securities Act and concerns jurisdiction over Securities Act claims—amending it to allow removal of only state law covered class actions does not create an exception to the removal bar.  See MoneyGram, 204 F. Supp. 3d at 791 (noting that for the exception to the removal bar to "have meaning, it must apply to some subset of claims that actually arise under the Securities Act" (quoting Rovner v. Vonage Holdings Corp., 2007 WL 446658, at *4 (D.N.J. Feb. 7, 2007))).  SLUSA's revision of Section 22(a) would have no purpose and would be rendered "mere surplusage."  Northumberland Cty. Ret. Sys. v. GMX Res., Inc., 810 F. Supp. 2d 1282, 1287 (W.D. Okla. 2011); see also Unschuld, 2007 WL 2729011, at *7 ("The Court agrees that defendants' construction [that Section 16 applies to federal law claims as well] is one that would give effect to all the terms of § 77v.").

21.     Thus, the proper interpretation of Section 16(c), as amended by SLUSA, is that it allows removal of Securities Act claims as long as they are asserted in a "covered class action brought in any State court involving a covered security" and allege the type of misconduct described in Section 16(b)(1) and (b)(2).  See 15 U.S.C. § 77p(b)-(c).  This interpretation is consistent with SLUSA's legislative intent and gives effect to all of SLUSA's provisions, and has been adopted by, among others, the United States in its recent amicus brief to the Supreme Court in Cyan.  See Br. for U.S. as Amicus Curiae, Cyan, 2017 WL 2333893, at *14 ("[Section 16(c)] is best understood to permit removal of 'any covered class action brought in any State court involving a covered security' and alleging the type of misconduct that is described in Section 77p(b).")  This interpretation also accords with the reasoning of district courts across multiple jurisdictions.  See,

*e.g.*, Lapin v. Facebook, Inc., 2012 WL 3647409, at *2 (N.D. Cal. Aug. 23, 2012) (denying motion to remand Securities Act claims); Schwartz v. Concordia Int'l Corp., 2017 WL 2559777, at *4 (E.D.N.Y. June 12, 2017) (same); Moneygram Int'l, Inc., 204 F. Supp. 3d at 790 (same); Hung v. iDreamSky Tech. Ltd., 2016 WL 299034, at *4 (S.D.N.Y. Jan. 25, 2016) (same); Wunsch v. Am. Realty Capital Props., 2015 WL 2183035, at *1 (D. Md. Apr. 14, 2015) (same); In re Fannie Mae 2008 Sec. Litig., 2009 WL 4067266, at *3 (S.D.N.Y. Nov. 24, 2009) (same); Knox, 613 F. Supp. 2d at 419 (same); Rubin v. Pixelplus Co., 2007 WL 778485, at *6 (E.D.N.Y. Mar. 13, 2007) (same); Rovner, 2007 WL 446658, at *5 (same).

22.     Nevertheless, despite SLUSA's plain language and Congress' intent, some district courts have adopted a contrary interpretation of Section 16(c), holding that it allows only covered class actions asserting state law claims —but, incongruously, not federal law claims—to be removed to federal court.[3]  Defendants recognize that numerous courts in the Northern District of California have concluded that Section 16(c) allows for the removal of only class actions asserting state law claims and not federal claims.  See, e.g., Olberding v. Avinger, Inc., 2017 WL 3141889, at *2 (N.D. Cal. July 21, 2017) (granting motion to remand); Book v. ProNAi Therapeutics, Inc., 2017 WL 2533664, at *2 (N.D. Cal. June 12, 2017) (same); Patel v. Terraform Glob., Inc., 2016 WL 827375, at *6 (N.D. Cal. Mar. 3, 2016) (same); Plymouth Cty. Ret. Sys. v. Model N, Inc., 2015 WL 65110, at *4 (N.D. Cal. Jan. 5, 2015) (same); Reyes v. Zynga Inc., 2013 WL 5529754, at *1 (N.D. Cal. Jan. 23, 2013) (same).

23.     ZTO respectfully submits that the interpretation of Section 16(c) adopted in these cases, which allows removal only of state law but not federal law claims, should not be adopted here because it is contrary to the language of the SLUSA amendments, it creates a result contrary to Congress' express intent in enacting SLUSA, and renders SLUSA's amendments to Section 22(a) superfluous.

---

[3] See Br. for U.S. as Amicus Curiae, Cyan, 2017 WL 2333893, at *17 (collecting cases and noting the "substantial confusion in the lower courts about whether state courts have jurisdiction over covered class actions that allege only 1933 Act claims. . . . [S]ome federal district courts, including a number of courts in New York, have ruled that [SLUSA] divests state courts of jurisdiction over covered class actions brought to enforce the 1933 Act.  Other district courts, including a number of courts in California, have reached the opposite conclusion").

**D.    A MOTION TO REMAND SHOULD BE DENIED OR, AT THE VERY LEAST, STAYED PENDING THE SUPREME COURT'S DECISION IN CYAN**

24.    Any motion to remand this action to California state court should be denied for the reasons set forth above, or alternatively, stayed pending the Supreme Court's resolution of <u>Cyan</u>, which would be dispositive of any motion to remand here.  Indeed, the Court in the Alabama Action has done precisely this.  (<u>See</u> Order Granting Defs.' Req. for Stay, <u>City of Birmingham Ret. & Relief Sys. v. ZTO Express (Cayman) Inc., et al</u>, No. 2:17-CV-1091-RDP (N.D. Ala. Aug. 29, 2017) (ECF No. 35 and attached hereto as Exhibit D).

25.    District courts have broad discretion to stay proceedings, including decisions on motions to remand.  <u>See</u> <u>Perryman v. Litton Loan Servicing, LP</u>, 2016 WL 1258584, at *1 (N.D. Cal. Mar. 30, 2016) ("A district court's discretion to stay proceedings 'is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'  Whether to stay proceedings is entrusted to the discretion of the district court." (citation omitted)).  In deciding whether to stay, courts consider "[(1)] the possible damage which may result from the granting of a stay; [(2)] the hardship or inequity which a party may suffer in being required to go forward; and [(3)] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  <u>Ramirez v. Trans Union, LLC</u>, 2015 WL 6159942, at *1 (N.D. Cal. June 22, 2015).  Each of these factors favors a stay over any remand motion pending the Supreme Court's resolution of <u>Cyan</u>.

26.    In <u>Cyan</u>, like here, plaintiffs brought a putative class action in California state court asserting claims under the federal Securities Act.  In moving for judgment on the pleadings in state court for lack of subject matter jurisdiction, defendants in <u>Cyan</u> argued that, under SLUSA's amendments to Section 22(a) of the Securities Act discussed above, state courts no longer have concurrent jurisdiction over covered class actions advancing Securities Act claims.  The lower court denied defendants' motion, and after California appellate courts rejected petitions for review, defendants petitioned the Supreme Court for writ of certiorari, presenting the question "which has split federal district courts in removal cases and thus sidelined federal appeals courts," namely:

1  "Whether state courts lack subject matter jurisdiction over covered class actions that allege only

2  [Securities] Act claims."  Pet. for Writ of Cert., Cyan, 2016 WL 3040512, at *i.  The Supreme

3  Court's decision on this question would resolve any motion to remand here.

4       27.     Remanding this action before the Supreme Court decides Cyan and allowing

5  Plaintiff to proceed in state court could deprive putative plaintiff class members and defendants of

6  the substantive and procedural safeguards provided by the PSLRA, such as the notice and

7  certification requirements and the lead-plaintiff appointment process.  See 15 U.S.C. § 77z-1(a)(2),

8  (3).  And staying this action pending Supreme Court review would also prevent potentially

9  wasteful state court proceedings, which would be nullified if the Supreme Court later rules that

10 state courts lack jurisdiction.  See Br. for U.S. as Amicus Curiae, Cyan, 2017 WL 2333893, at *6

11 ("Properly construed, Section [16(c)] authorizes removal of [Securities] Act suits like this one, and

12 it provides appropriate protection against the use of state-court lawsuits to circumvent the

13 PSLRA's substantive and procedural safeguards.").  Additionally, a Supreme Court decision would

14 finally resolve the remand issue and vastly simplify the question before this Court.  See id.  Lastly,

15 the present case is in a preliminary stage—no Defendant has made any motion or appearance in

16 state court, no discovery has occurred and no trial date has been set—so Plaintiff is not unfairly

17 prejudiced by a stay of the decision on remand.

18      28.     Indeed, in the related Alabama Action, the same Defendants removed identical

19 claims to the Northern District of Alabama and sought a transfer to the S.D.N.Y.  Plaintiffs

20 opposed the transfer and filed a motion to remand.  The Northern District of Alabama court granted

21 a stay pending the decision in Cyan and agreed that it is "prudent to await the Supreme Court's

22 guidance" because its "decision on this issue may be dispositive of Plaintiff's Motion to Remand."

23 (See Order Granting Defs.' Req. for Stay, City of Birmingham Ret. & Relief Sys. v. ZTO Express

24 (Cayman) Inc., et al, No. 2:17-CV-1091-RDP, at *1 (N.D. Ala. Aug. 29, 2017) (ECF No. 35 and

25 attached hereto as Exhibit D).

26      29.     Accordingly, were this Court in doubt regarding whether to retain this case, ZTO

27 respectfully submits that the Court should await the Supreme Court's resolution of Cyan before

28 ruling on any remand motion.  See Bowden v. Contract Callers, Inc., 2017 WL 1732017, at *3

(N.D. Cal. Apr. 5, 2017) (granting stay of action pending the D.C. Circuit's resolution of <u>ACA International</u>).

    30.    Additionally, if further questions arise about either the propriety of removal or the need for a stay of the decision on remand, ZTO requests the opportunity to submit a brief and present oral argument in support of its position.

    31.    WHEREFORE, ZTO submits that this action is now properly removed from the Superior Court of California for San Mateo County and is properly before this District Court, and that all further actions should take place before this Court.[4]

DATED:  September 15, 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____ */s/ Peter B. Morrison*_____
Peter B. Morrison
Attorneys for Defendants
ZTO Express (Cayman) Inc.

---

[4] By filing this Notice of Removal, ZTO does not waive any defenses that may be available to it (including without limitation any defenses relating to service, process, and jurisdiction) and does not concede that the allegations in the summons or complaint state a valid claim under any applicable law.  ZTO reserves the right to (i) submit a motion to dismiss at the appropriate time; (ii) submit evidence and affidavits to support the foregoing bases for federal jurisdiction at an appropriate time, should that become necessary; and (iii) supplement or amend this Notice of Removal to add other bases for federal jurisdiction that become apparent as a result of any amended complaint filed by the Plaintiff in the State Court Action.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, Virginia Milstead, am the ECF User whose ID and password are being used to file this Notice of Removal.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Peter Morrison, has concurred in this filing.

DATED: _____

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____*/s/ Virginia Milstead*_____
Virginia Milstead
Attorneys for Defendants
ZTO Express (Cayman) Inc.

EXHIBIT A



1  STEPHENS & STEPHENS LLP
   CONRAD B. STEPHENS (266790)
2  505 S. McClelland St.
   Santa Maria, CA 93454
3  Telephone: (805) 922-1951
   Facsimile: (805) 922-8013
4  conrad@stephensfirm.com

5  Attorney for Plaintiff

**FILED**
SAN MATEO COUNTY

AUG 2 1 2017

Clerk of the Superior Court
By _____
DEPUTY CLERK

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SAN MATEO

10  MICHAEL McGRATH, Individually and on    )  Case No.
    Behalf of All Others Similarly Situated,  )
11                                           )
                      Plaintiff,             )  CLASS ACTION
12                                           )
         vs.                                 )
13                                           )  COMPLAINT FOR VIOLATIONS OF THE
    ZTO EXPRESS (CAYMAN) INC.,               )  SECURITIES ACT OF 1933
14  MEISONG LAI,                             )
    JIANMIN (JAMES) GUO,                     )
15  JIANFA LAI,                              )
    JILEI WANG,                              )
16  XIANGLIANG HU,                           )
    BAIXI LAN,                               )
17  XING LIU,                                )
    FRANK ZHEN WEI,                          )
18  MORGAN STANLEY & CO.                     )
        INTERNATIONAL, PLC,                  )
19  GOLDMAN SACHS (ASIA) L.L.C.,             )
    CHINA RENAISSANCE SECURITIES            )
20      (HONG KONG) LIMITED,                 )
    CITIGROUP GLOBAL MARKETS INC.,           )
    CREDIT SUISSE SECURITIES (USA) LLC,     )
21  J.P. MORGAN SECURITIES LLC and           )
    DOES 1-25, inclusive,                    )
22                    Defendants.            )  DEMAND FOR JURY TRIAL
                                             )
23

24

25
                         17 – CIV – 03805
26                       CMP
                         Complaint
27                       668261

28

                 COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

FILE BY FAX

**INTRODUCTION**

1.     Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by ZTO Express (Cayman) Inc. ("ZTO" or the "Company"), as well as media and analyst reports about the Company and Company press releases.   Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

**SUMMARY OF THE ACTION**

2.     Plaintiff brings this securities class action on behalf of all persons who purchased or otherwise acquired ZTO American Depositary Shares ("ADSs") pursuant or traceable to the F-1 registration statement and the incorporated and *in pari materia* F-6 registration statement and Prospectus (collectively, the "Registration Statement") issued in connection with ZTO's October 2016 initial public stock offering (the "IPO" or "Offering").

3.     The action asserts strict liability claims under §§11, 12(a)(2) and 15 of the Securities Act of 1933 ("1933 Act") against ZTO, certain of ZTO's officers and directors, and the underwriters of the IPO.

4.     ZTO is a Chinese logistics company that provides shipping and delivery services to merchants on e-commerce platforms like Alibaba.

5.     In October 2016, ZTO commenced the IPO, issuing over 72 million ADSs at $19.50 per share, all pursuant to the Registration Statement.

6.     The Registration Statement contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements made not misleading.   Among other things, the Registration Statement failed to disclose that two quarters *before* the IPO, ZTO had lowered its network transit fees to subsidize its network partners in response to increased operating costs, pricing pressure, competition and other negative market

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1 | conditions. The Registration Statement further failed to disclose the consequent negative impact on

2 | ZTO's revenue, margins, earnings and forecasts.

3 |      7.    Defendants were required to disclose this material information in the Registration

4 | Statement for at least three independent reasons. First, SEC Regulation S-K, 17 C.F.R. §229.303

5 | ("Item 303"), requires disclosure of any known events or uncertainties that at the time of the IPO

6 | had caused or were reasonably likely to cause ZTO's disclosed financial information not to be

7 | indicative of future operating results. The already-occurring increased operating costs, pricing

8 | pressure, competition and other negative market conditions faced by ZTO, the lowered network

9 | transit fees and other subsidies from ZTO to its network partners, and the consequent negative

10 | impact on ZTO's revenue, margins, earnings and forecasts were likely to (and in fact did) materially

11 | and adversely affect ZTO's future results and prospects, and thus were required to be disclosed in

12 | the Registration Statement under Item 303.

13 |      8.    Second, SEC Regulation S-K, 17 C.F.R. §229.503 ("Item 503"), requires, in the

14 | "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that

15 | make the Offering risky or speculative and that each risk factor adequately describe the risk. ZTO's

16 | discussions of risk factors did not adequately describe the risks posed by the already-occurring

17 | increased operating costs, pricing pressure, competition and other negative market conditions faced

18 | by ZTO, the lowered network transit fees and other subsidies from ZTO to its network partners, or

19 | the consequent negative impact on ZTO's revenue, margins, earnings and forecasts.

20 |      9.    Third, defendants' failure to disclose the already-occurring increased operating costs,

21 | pricing pressure, competition and other negative market conditions faced by ZTO, the lowered

22 | network transit fees and other subsidies from ZTO to its network partners, and the consequent

23 | negative impact on ZTO's revenue, margins, earnings and forecasts, rendered false and misleading

24 | the Registration Statement's many statements touting ZTO's revenues, margins and purportedly

25 | advantageous business model, as well as the Registration Statement's many references to known

26 | risks that, "*if*" they occur, "*may*" adversely affect the Company. In truth, these "risks" had already

27 | materialized at the time of the IPO and already were affecting, and would continue to negatively

28 | affect, the Company's business and prospects.

- 3 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1    10.    With these misrepresentations and omissions, the IPO was extremely lucrative for

2    defendants, who raised more than $1.4 billion in gross proceeds.  Shortly after the IPO, however,

3    the price of ZTO ADSs plummeted.  By the commencement of this action, ZTO ADSs had traded

4    below $12 per share, a nearly 43% decline from the $19.50 per share offering price.  All told,

5    investors suffered hundreds of millions of dollars in losses.

6                                **JURISDICTION AND VENUE**

7    11.    This Court has original subject matter jurisdiction under the California Constitution,

8    Article VI, §10.  Removal is barred by §22 of the 1933 Act.

9    12.    This Court has personal jurisdiction under California Code of Civil Procedure

10   ("C.C.P.") §410.10 because defendants and their agents affirmatively solicited the subject securities

11   and disseminated the Registration Statement to plaintiff and other investors in California, including,

12   *e.g.*, during roadshows conducted in California, and those contacts with California have a

13   substantial connection to the claims alleged herein.  Defendants disseminated the false, misleading

14   and incomplete Registration Statement to the investing public in this County, resulting in the harm

15   complained of herein.

16   13.    This Court is the proper venue for this action under C.C.P. §395.

17                                       **PARTIES**

18   14.    Plaintiff Michael McGrath purchased ZTO ADSs pursuant or traceable to the IPO

19   and was damaged thereby.

20   15.    Defendant ZTO is a Chinese logistics company, akin to FedEx or UPS, that provides

21   shipping and delivery services in China to merchants on e-commerce platforms like Alibaba. ZTO

22   is headquartered in Shanghai, China and incorporated in the Cayman Islands.  Its shares are traded

23   on the NYSE under the ticker symbol "ZTO."

24   16.    Defendant Meisong Lai ("M. Lai") is ZTO's Chief Executive Officer and the

25   Chairman of ZTO's Board of Directors.  Defendant M. Lai signed the Registration Statement.

26   17.    Defendant Jianmin (James) Guo is ZTO's Chief Financial Officer.  Defendant Guo

27   signed the Registration Statement.

28

- 4 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

18.     Defendant Jianfa Lai ("J. Lai") is member of ZTO's Board of Directors.  Defendant J. Lai signed the Registration Statement.

19.     Defendant Jilei Wang is a member of ZTO's Board of Directors.  Defendant Wang signed the Registration Statement.

20.     Defendant Xiangliang Hu is a member of ZTO's Board of Directors.  Defendant Hu signed the Registration Statement.

21.     Defendant Baixi Lan is a member of ZTO's Board of Directors.  Defendant Lan signed the Registration Statement.

22.     Defendant Xing Liu is a member of ZTO's Board of Directors.  Defendant Liu signed the Registration Statement.

23.     Defendant Frank Zhen Wei is a member of ZTO's Board of Directors.  Defendant Wei signed the Registration Statement.

24.     The defendants named in ¶¶16-23 are referred to herein as the "Individual Defendants."  The Individual Defendants each signed the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement and/or attended roadshows and other promotions to meet with and present favorable information to potential ZTO investors, all motivated by their own and the Company's financial interests.

25.     Defendant Morgan Stanley & Co. International plc is a financial services company that acted as an underwriter for ZTO's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase ZTO securities issued pursuant thereto.

26.     Defendant Goldman Sachs (Asia) L.L.C. is a financial services company that acted as an underwriter for ZTO's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase ZTO securities issued pursuant thereto.

27.     Defendant China Renaissance Securities (Hong Kong) Limited is a financial services company that acted as an underwriter for ZTO's IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase ZTO securities issued pursuant thereto.

- 5 -

1      28.     Defendant Citigroup Global Markets Inc. is a financial services company that acted

2 as an underwriter for ZTO's IPO, helping to draft and disseminate the Registration Statement and

3 solicit investors to purchase ZTO securities issued pursuant thereto.

4      29.     Defendant Credit Suisse Securities (USA) LLC is a financial services company that

5 acted as an underwriter for ZTO's IPO, helping to draft and disseminate the Registration Statement

6 and solicit investors to purchase ZTO securities issued pursuant thereto.

7      30.     Defendant J.P. Morgan Securities LLC is a financial services company that acted as

8 an underwriter for ZTO's IPO, helping to draft and disseminate the Registration Statement and

9 solicit investors to purchase ZTO securities issued pursuant thereto.

10      31.     The defendants named above in ¶¶25-30 are referred to herein as the "Underwriter

11 Defendants."  Pursuant to the 1933 Act, the Underwriter Defendants are liable for the false and

12 misleading statements in the Registration Statement as follows:

13      (a)     The Underwriter Defendants are investment banking houses that specialize,

14 *inter alia*, in underwriting public offerings of securities.  They served as the underwriters of the IPO

15 and shared over $45 million in fees collectively.  The Underwriter Defendants arranged a multi-city

16 roadshow prior to the IPO during which they, and representatives from ZTO, met with potential

17 investors and presented highly favorable information about the Company, its operations and its

18 financial prospects.

19      (b)     Representatives of the Underwriter Defendants also assisted ZTO and the

20 Individual Defendants in planning the IPO, and were required to conduct an adequate and

21 reasonable investigation into the business and operations of ZTO, an undertaking known as a "due

22 diligence" investigation.  The due diligence investigation was required of the Underwriter

23 Defendants in order to engage in the IPO.  During the course of their "due diligence," the

24 Underwriter Defendants had continual access to confidential corporate information concerning

25 ZTO's operations and financial prospects.

26      (c)     In addition to availing themselves of virtually unlimited access to internal

27 corporate documents, agents of the Underwriter Defendants met with ZTO's lawyers, management

28 and top executives and engaged in "drafting sessions" between at least June 2016 and October

2016. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which ZTO ADSs would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about ZTO would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and ZTO's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, ZTO's existing problems as detailed herein.

32.     The true names and capacities of defendants sued herein under C.C.P. §474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek to amend this complaint and include these Doe defendants' true names and capacities when they are ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Class.

### DEFENDANTS' FALSE AND MISLEADING REGISTRATION STATEMENT AND PROSPECTUS

33.     On June 23, 2016, ZTO filed with the SEC a confidential draft registration statement on Form F-1, which, incorporating and in combination with related documents on Form F-6 and filed pursuant to Rule 424(b)(4), would be used for the IPO following a series of amendments in response to SEC comments, including comments from the SEC emphasizing the importance of adequately disclosing material trends and risk factors, as required by Items 303 and 503.

34.     On October 24, 2016, ZTO filed its final amendment to the Registration Statement, which registered over 82 million ZTO shares for public sale. The SEC declared the Registration Statement effective on October 26, 2016. ZTO priced the IPO at $19.50 per share and filed the final Prospectus for the IPO, which forms part of the Registration Statement. Through the IPO, defendants issued and sold over 72 million ADSs, generating over $1.36 billion for defendants.

35.     The Registration Statement contained untrue statements of material fact and omitted to state material facts both required by governing regulations and necessary to make the statements

- 7 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1   made not misleading.   Foremost, the Registration Statement failed to disclose that two quarters

2   *before* the IPO, ZTO had lowered its network transit fees to subsidize its network partners in

3   response to increased operating costs, pricing pressure, competition and other negative market

4   conditions.  The Registration Statement further failed to disclose the consequent negative impact on

5   ZTO's revenue, margins, earnings and forecasts.

6          36.     The Registration Statement also misleadingly touted that express delivery service

7   constituted ZTO's primary revenue source without disclosing that, two quarters before the IPO,

8   ZTO had the lowered its network transit fees, which had already negatively impacted this critical

9   revenue source.  For example, the Registration Statement stated as follows:

10             We derive substantially all of our revenues from express delivery services
       that we provide to our network partners, which mainly include parcel sorting and
11       line-haul transportation.  We charge our network partners [a] network transit fee for
       each parcel that is processed through our network.  Such fees represented 94.1%,
12       94.9%, 95.9% and 93.5% of our total express delivery services revenues in 2014,
       2015 and the six months ended June 30, 2015 and 2016, respectively. . . .
13
             Our revenues are primarily driven by our parcel volume and the network
14       transit fee we charge our network partners for each parcel going through our
       network.
15
                               *       *       *
16
             We determine the level of pricing of our network transit fee based on the
17       operating costs of our business while also considering other factors including market
       conditions and competitions as well as our service quality.  The network transit fees
18       we charge our network partners are primarily measured by (i) a fixed amount for a
       waybill attached to each parcel and (ii) a variable amount per parcel for sorting and
19       line-haul transportation based on the parcel weight and route.  The delivery service
       fees we charge the enterprise customers are  also based on parcel weight and route.
20
                               *       *       *
21
             The principle source of our revenue consisted of network transit fees derived from
22       sorting and line haul transportation services provided to the pickup outlets operated
       by our network partners.
23
       37.     The Registration Statement also misleadingly touted ZTO's growth, profitability and
24
   other business and financial results, while failing to disclose the already-occurring increased
25
   operating costs, pricing pressure, competition and other negative market conditions faced by ZTO,
26
   the lowered network transit fees and other subsidies from ZTO to its network partners, and that the
27
   consequent negative impact on ZTO's revenue, margins, earnings and forecasts was likely to (and
28

EXHIBIT A, PAGE 20

in fact did) materially and adversely affect ZTO's future results and prospects.  For example, the Registration Statement stated as follows:

> We have achieved significant growth and profitability.  Our total parcel volume increased from 279 million in 2011 to 2,946 million in 2015 and from 1,185 million in the six months ended June 30, 2015 to 1,913 million in the same period in 2016.  Our total parcel volume in the nine months ended September 30, 2016 was 3,015 million, compared to 1,917 million in the same period in 2015.  Our revenues increased from RMB3.9 billion in 2014 to RMB6.1 billion (US$915.8 million) in 2015 and from RMB2.5 billion in the six months ended June 30, 2015 to RMB4.2 billion (US$638.8 million) in the same period in 2016.  We generated operating profit of RMB600.3 million and RMB1.5 billion (US$230.1 million) and our operating profit margin was 15.4% and 25.1% in 2014 and 2015, respectively.  We generated operating profit of RMB579.9 million and RMB1.1 billion (US$159.0 million) and our operating profit margin was 23.3% and 24.9% in the six months ended June 30, 2015 and 2016, respectively.

> *          *          *

> We are a leading express delivery company in China and one of the largest express delivery companies globally, in terms of total parcel volume in 2015, according to the iResearch Report.  We have demonstrated the fastest growth rate among the top five Chinese express delivery companies as of December 31, 2015, with our annual parcel volume growing at a compounded annual growth rate, or CAGR, of 80.3% between 2011 and 2015, during which we recorded consecutive annual increases in market share.  We have achieved superior profitability along with our rapid growth.  Our operating margin in 2015 was 25.1%, which is the ratio of our income from operations to revenues, which was one of the highest among the major publicly listed logistics companies globally.

38.     The Registration Statement also misleadingly touted the purported advantages of ZTO's "network partner" and "shared success" business model, while downplaying the actual and potential negative risks to ZTO's business and financial results.  For example, the Registration Statement stated as follows:

> Operational efficiency and cost management are critical to the success of an express delivery business.  We have achieved strong operational efficiency through centralized control and management of 74 sorting hubs and a fleet of over 3,300 trucks, route planning and optimization, as well as our proprietary waybill tracking system and transportation management system.   Our operational efficiency and economies of scale have resulted in our cost leadership with unit cost per parcel.

> *          *          *

> We operate a highly scalable network partner model, which we believe is best suited to support the significant growth of e-commerce in China.  We leverage our network partners to provide pickup and last-mile delivery services, while we control the mission-critical line-haul transportation and sorting network within the express delivery service value chain.  The network partner model is developed to reach and serve the Chinese e-commerce industry's fragmented and geographically dispersed merchant and consumer base and seasonal demand.  It allows us to achieve strong

- 9 -

operating leverage through minimizing fixed costs and capital requirements, consequently driving higher return on invested capital and equity.

We have established a distinctive "shared success" system, which enables us to align the interests of our network partners, management and employees with ours through a reward and risk sharing mechanism. This shared success system incentivizes our network partners to maximize their growth and profitability and strengthens their loyalty to our ZTO brand and business. The general managers of our key regions collectively hold a significant equity stake in our company, and we believe this initiative incentivizes our key stakeholders and further ensures the stability of our network. In addition, our innovative, entrepreneurial approach has led to a number of industry firsts. We were first in the industry to introduce a fee sharing mechanism in which the pickup and delivery outlets share the delivery service fees of each delivery order. We also foster an effective and transparent system that enables our network partners to exit our network by transferring their business to buyers approved by us and benefit from any value appreciation of their business through such transfers. We facilitate those transfers by providing information and guidance on valuation of the transferred business with participation by both parties.

39. The Registration Statement also misleadingly downplayed the risk and impact of competition to ZTO's business and financial results, failing to disclose that increased operating costs, pricing pressure and competition had already caused ZTO to subsidize its network partners with lowered network transit fees. For example, the Registration Statement stated as follows:

We operate in a highly competitive and fragmented industry. We compete primarily with leading domestic express delivery companies including SF Express, STO Express, YTO Express, Yunda Express as well as EMS. We compete with them based on a number of factors, including business model, operational capabilities, cost control and service quality.

40. The Registration Statement also purported to warn of numerous risks that, "*if*" they occur, "*may*" adversely affect the Company while failing to disclose that these very "risks" had already materialized at the time of the IPO. For example, the Registration Statement stated:

- "*If* we are not able to effectively control our cost and adjust the level of network transit fees based on operating costs and market conditions, our profitability and cash flow *may* be adversely affected."

- "*If* we and our network partners cannot effectively control our costs to remain competitive, our market share and revenue *may* decline."

- "[W]e have historically experienced declines in the delivery service market prices and *may* face downward pricing pressure again."

- "*[I]f* we have to subsidize our network partners to increase our network partners' competitiveness, our gross margin *may* decline."

- 10 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

41.     The statements above were materially false and misleading.  ZTO was already failing to effectively control its network fees and other operating costs.  ZTO was already negatively affected by competition, downward pricing pressure and other market conditions.  ZTO was already subsidizing network partners through lowered network transit fees.  ZTO's revenues, margins, forecasts and other financial metrics were already suffering as a result.

42.     Beyond the foregoing affirmatively false and misleading statements of material fact, defendants were required to disclose all of this misrepresented and omitted information in the Registration Statement for at least three independent reasons.  First, Item 303 requires disclosure of any known events or uncertainties that at the time of the IPO had caused or were reasonably likely to cause ZTO's disclosed financial information not to be indicative of future operating results.  The already-occurring increased operating costs, pricing pressure, competition and other negative market conditions faced by ZTO, the lowered network transit fees and other subsidies from ZTO to its network partners, and the consequent negative impact on ZTO's revenue, margins, earnings and forecasts were likely to (and in fact did) materially and adversely affect ZTO's future results and prospects.

43.     Second, Item 503 requires, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describe the risk.  ZTO's discussions of risk factors did not even mention, much less adequately describe, the risks posed by the already-occurring increased operating costs, pricing pressure, competition and other negative market conditions faced by ZTO, the lowered network transit fees and other subsidies from ZTO to its network partners, and the consequent negative impact on ZTO's revenue, margins, earnings and forecasts.

44.     Third, defendants' failure to disclose the already-occurring increased operating costs, pricing pressure, competition and other negative market conditions faced by ZTO, the lowered network transit fees and other subsidies from ZTO to its network partners, and the consequent negative impact on ZTO's revenue, margins, earnings and forecasts, rendered false and misleading the Registration Statement's many statements touting ZTO's revenues, margins and purportedly advantageous business model, as well as the Registration Statement's many references to known

- 11 -

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1  risks that, "*if*" they occur, "*may*" adversely affect the Company.  These "risks" had already

2  materialized at the time of the IPO.

3       45.  With these misrepresentations and omissions, the IPO was extremely lucrative for

4  defendants, who raised more than $1.4 billion in gross proceeds.

5       46.  On February 27, 2017, ZTO announced disappointing fourth quarter 2016 financial

6  results.  Among other things, ZTO reported that its quarterly "cost of revenues" had increased

7  49.8% year-over-year and that "[t]he increase primarily resulted from increases in line-haul

8  transportation costs, sorting hub operating costs, and cost of accessories."  ZTO further disclosed

9  that its "[g]ross margin decreased to 36.4% from 38.1% in the same period last year, mainly

10  attributable to the increase in line-haul transportation cost."

11       47.  On this news, market analysts reacted negatively.  For example, analysts with J.P.

12  Morgan lowered their ZTO price target, reacting to ZTO's disappointing margins and other

13  financial metrics as follows:

14       We are turning more cautious on ZTO's 2017 financial outlook due to soft
   1Q revenue guidance and *weaker-than-expected 4Q margins.* . . .  Although the

15  industry volume growth outlook remains solid . . . *we see increasing margin risk* on
   rising transportation costs, while we believe the fast growth of the local food

16  delivery market could add pressure to network partners' labor supply.  *We expect the*
   *shares to react negatively* . . . .

17       48.  Later, during a May 17, 2017 conference call with ZTO investors and analysts, in

18  response to a question from Morgan Stanley analyst Edward Zhu, defendants Lai and Guo admitted

19  that ZTO *had already lowered its network transit fees two quarters before the IPO*, which pre-IPO

20  subsidies rendered ZTO's year-over-year results "*not directly comparable*," stating as follows:

21       EDWARD ZHU, ANALYST, MORGAN STANLEY: (Spoken in Chinese)

22       *So my first question is about your GP margin, we see that in the first*

23  *quarter GP margin still declined*, although the revenue increased dramatically and
   the net profit was pretty good.  So, what's your target for the GP margin for this

24  year?  Specifically, what does the fuel cost account for your total cost, in your cost
   structure?  *And also, the increase of the last mile delivery fee, will that cost be*

25  *borne by the headquarter?  Would you be giving some subsidies for the first mile*
   *franchisees for this*?  First question.

26            *         *         *

27       MEISONG LAI: (Spoken in Chinese)

28

- 12 -

JAMES GUO:  So the first question is about the gross margin in Q1.  The Chairman says – *first of all, I would like to point out that the gross margin in Q1 this year and last year are not directly comparable.  The reason is that, during the second quarter of last year, we lowered the network transit fees we charge our network partners, and the change in the pricing has led to a reduction in transit fee revenue per package.*  So, because of this change, the quarterly revenue generated during the second quarter of last year is not comparable with that in the previous period.

And such pricing policy will change in April last year, *so the apple-to-apple comparisons will begin during the second quarter of this year.*  And according to the data that we currently have for April 2017, our gross margin stabilized when compared with the same period of last year.  In the long term, he believes that the gross margin will be stabilized and increase steadily.

49.     Subsequent to the IPO, ZTO shares plummeted.  By the commencement of this action, ZTO ADSs had traded below $12 per ADS, a nearly 43% decline from the $19.50 per ADS offering price.  As a result, investors have suffered hundreds of millions of dollars in losses.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this class action on behalf of all persons who purchased or otherwise acquired ZTO ADSs pursuant or traceable to the Registration Statement issued in connection with the IPO (the "Class").  Excluded from the Class are defendants and their families, the officers and directors and affiliates of defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by ZTO or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law, as complained of herein.

- 13 -

1   53.   Plaintiff will fairly and adequately protect the interests of the members of the Class
2   and has retained counsel competent and experienced in class and securities litigation.

3   54.   Common questions of law and fact exist as to all members of the Class and
4   predominate over any questions solely affecting individual members of the Class.   Among the
5   questions of law and fact common to the Class are:

6         (a)   whether defendants violated the 1933 Act;

7         (b)   whether the Registration Statement was negligently prepared and contained
8   inaccurate statements of material fact and omitted material information required to be stated therein;
9   and

10        (c)   to what extent the members of the Class have sustained damages and the
11  proper measure of damages.

12  55.   A class action is superior to all other available methods for the fair and efficient
13  adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the
14  damages suffered by individual Class members may be relatively small, the expense and burden of
15  individual litigation make it impossible for members of the Class to individually redress the wrongs
16  done to them.   There will be no difficulty in the management of this action as a class action.

17
18                        **FIRST CAUSE OF ACTION**

19                    **For Violation of §11 of the 1933 Act**
                           **Against All Defendants**

20  56.   Plaintiff incorporates ¶¶1-55 by reference.

21  57.   This Cause of Action is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on
22  behalf of the Class, against all defendants.

23  58.   The Registration Statement contained untrue statements of material fact, omitted to
24  state other facts necessary to make the statements made not misleading, and omitted to state
25  material facts required to be stated therein.

26  59.   Defendants are strictly liable to plaintiff and the Class for the misstatements and
27  omissions.

28

- 14 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

60.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

61.     By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

62.     Plaintiff acquired ZTO ADSs issued pursuant to the Registration Statement.

63.     Plaintiff and the Class have sustained damages.   The value of ZTO ADSs has declined substantially subsequent to and due to defendants' violations.

64.     At the time of their purchases of ZTO ADSs, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time plaintiff commenced this action.

## SECOND CAUSE OF ACTION

### For Violation of §12(a)(2) of the 1933 Act
### Against All Defendants

65.     Plaintiff incorporates ¶¶1-64 by reference.

66.     By means of the defective Prospectus, defendants promoted and sold ZTO ADSs to plaintiff and other members of the Class.

67.     The Prospectus for the IPO contained untrue statements of material fact and concealed and failed to disclose material facts, as detailed above.  Defendants owed plaintiff and the other members of the Class who purchased ZTO ADSs pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.  Defendants, in the exercise

- 15 -
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1  of reasonable care, should have known of the misstatements and omissions contained in the

2  Prospectus as set forth above.

3       68.    Plaintiff did not know, nor in the exercise of reasonable diligence could plaintiff

4  have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired

5  ZTO ADSs.

6       69.    By reason of the conduct alleged herein, defendants violated §12(a)(2) of the 1933

7  Act. As a direct and proximate result of such violations, plaintiff and the other members of the

8  Class who purchased ZTO ADSs pursuant to the Prospectus sustained substantial damages in

9  connection with their purchases of the ADSs. Accordingly, plaintiff and the other members of the

10  Class who hold ADSs issued pursuant to the Prospectus have the right to rescind and recover the

11  consideration paid for their shares, and hereby tender their ADSs to defendants sued herein. Class

12  members who have sold their ADSs seek damages to the extent permitted by law.

13
14
15

**THIRD CAUSE OF ACTION**

**For Violation of §15 of the 1933 Act**
**Against All Defendants**

16       70.    Plaintiff incorporates ¶¶1-69 by reference.

17       71.    This Cause of Action is brought pursuant to §15 of the 1933 Act against all

18  defendants.

19       72.    The Individual Defendants were controlling persons of ZTO by virtue of their

20  positions as directors and/or senior officers of ZTO. The Individual Defendants each had a series of

21  direct and/or indirect business and/or personal relationships with other directors and/or officers

22  and/or major shareholders of ZTO. The Company controlled the Individual Defendants and all of

23  ZTO's employees.

24       73.    ZTO and the Individual Defendants were each culpable participants in the violations

25  of §§11 and 12(a)(2) of the 1933 Act alleged in the First and Second Causes of Action above, based

26  on their having signed or authorized the signing of the Registration Statement and having otherwise

27  participated in the process which allowed the IPO to be successfully completed.

28

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

1                                 **PRAYER FOR RELIEF**

2          WHEREFORE, plaintiff prays for relief and judgment, as follows:

3          A.      Under C.C.P. §382, certifying this as a class action, appointing plaintiff as a Class

4    representative, and appointing plaintiff's counsel as Class Counsel;

5          B.      Awarding damages in favor of plaintiff and the Class against all defendants, jointly

6    and severally, in an amount to be proven at trial, including interest thereon;

7          C.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in this

8    action, including counsel fees and expert fees;

9          D.      Awarding rescission or a rescissory measure of damages; and

10         E.      Awarding equitable, injunctive or other relief, including disgorgement or restitution,

11   as deemed appropriate by the Court.

12                                  **JURY DEMAND**

13         Plaintiff demands trial by jury.

14   DATED:  August 18, 2017                 STEPHENS & STEPHENS LLP
                                             CONRAD B. STEPHENS
15

16

17

18                                           CONRAD B. STEPHENS

19

20

21

22

23

24

25

26

27

28

                                          - 17 -
                 COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

# EXHIBIT B

85 USLW 3594, 85 USLW 3602, 17 Cal. Daily Op. Serv. 6171

137 S.Ct. 2325
Supreme Court of the United States

CYAN, INC., et al., petitioners,

v.

BEAVER COUNTY EMPLOYEES
RETIREMENT FUND, et al.

No. 15–1439.
|

June 27, 2017.

**Opinion**

Petition for writ of certiorari to the Court of Appeal of California, First Appellate District granted.

**All Citations**

137 S.Ct. 2325, 85 USLW 3594, 85 USLW 3602, 17 Cal. Daily Op. Serv. 6171

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

EXHIBIT C

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Conrad B. Stephens (266790)
Stephens & Stephens LLP
505 S. McClelland St.
Santa Maria, CA 93454
TELEPHONE NO.: (805) 922-1951    FAX NO.: (805) 922-8013
ATTORNEY FOR (Name): Michael McGrath

**FOR COURT USE ONLY**

**FILED
SAN MATEO COUNTY**
AUG 21 2017
Clerk of the Superior Court
By _____
DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo
STREET ADDRESS: 400 County Center, 4th Floor
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Hall of Justice and Records

CASE NAME:
McGrath v. ZTO Express (Cayman) Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER 17CIV03805 |
|---|---|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter   ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☑ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☑ is    ☐ is not ·  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties    d. ☑ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary    b. ☑ nonmonetary; declaratory or injunctive relief    c. ☐ punitive

4. Number of causes of action (specify):  Three

5. This case ☑ is    ☐ is not    a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date:  August 18, 2017

Conrad B. Stephens
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

17 – CIV – 03805
CCCS
Civil Case Cover Sheet
668262

FILE BY FAX

Page 1 of 2
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**CIVIL CASE COVER SHEET**



CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property Damage/Wrongful Death
  Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
  Product Liability (*not asbestos or toxic/environmental*) (24)
  Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business Practice (07)
  Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
  Defamation (e.g., slander, libel) (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
    Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
  Insurance Coverage (*not provisionally complex*) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment (*non-domestic relations*)
    Sister State Judgment
    Administrative Agency Award (*not unpaid taxes*)
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-harassment*)
    Mechanics Lien
    Other Commercial Complaint Case (*non-tort/non-complex*)
    Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
  Partnership and Corporate Governance (21)
  Other Petition (*not specified above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

ZTO EXPRESS (CAYMAN) INC., MEISONG LAI,
(Additional Parties Attachment form is attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

MICHAEL McGRATH, Individually and on Behalf of All Others
Similarly Situated



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED
SAN MATEO COUNTY

AUG 2 1 2017

Clerk of the Superior Court
By _____ DEPUTY CLERK

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| (El nombre y dirección de la corte es:) Superior Court of San Mateo County | (Número del Caso): 17 C I V 0 3 8 0 5 |

400 County Center, 4th Floor
Redwood City, CA 94063

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Conrad B. Stephens, 505 S. McClelland St., Santa Maria, CA 93454

| DATE: | | | | | , Deputy |
|---|---|---|---|---|---|
| (Fecha) AUG 2 1 2017 | RODINA M. CATALANO | Clerk, by (Secretario) | | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other (specify):
4. ☐ by personal delivery on (date):

17 – CIV – 03805
SUM
Summons Issued / Filed
668264

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|
| Judicial Council of California | | www.courtinfo.ca.gov |
| SUM-100 [Rev. July 1, 2009] | | |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| McGrath v. ZTO Express (Cayman) Inc., et al. | |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

JIANMIN (JAMES) GUO, JIANFA LAI, JILEI WANG, XIANGLIANG HU, BAIXI LAN, XING LIU, FRANK ZHEN WEI, MORGAN STANLEY & CO. INTERNATIONAL, PLC, GOLDMAN SACHS (ASIA) L.L.C., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, J.P. MORGAN SECURITIES LLC and DOES 1-25, inclusive

Page __1__ of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

EXHIBIT C, PAGE 34

NOTICE OF CASE MANAGEMENT CONFERENCE

*McGrath*

Case No. 1 7 C I V 0 3 8 0 5

vs.

*3TO Express (Chapman* et al

FILED SAN MATEO COUNTY
AUG 2 1 2017
Clerk of the Superior Court
By DEPUTY CLERK

Date: JAN 0 4 2018
Time 9:00 a.m.

--on Tuesday & Thursday
--on Wednesday & Friday

Dept.

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:
   a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).
   b) Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c) File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.
   d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10–days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes," etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:
   a) Referring parties to voluntary ADR and setting an ADR completion date;
   b) Dismissing or severing claims or parties;
   c) Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

17–CIV–03805
NCMC
Notice of Case Management Conference
668265



For further information regarding case management policies and procedures, see the court's website at: www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).*

EXHIBIT C, PAGE 35

CM-015

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Conrad B. Stephens (266790)<br>Stephens & Stephens LLP<br>505 S. McClelland St.<br>Santa Maria, CA 93454<br>TELEPHONE NO.: (805) 922-1951   FAX NO. *(Optional):* (805) 922-8013<br>E-MAIL ADDRESS *(Optional):* conrad@stephensfirm.com<br>ATTORNEY FOR *(Name):* Michael McGrath | *FOR COURT USE ONLY*<br><br>**FILED**<br>SAN MATEO COUNTY<br>AUG 2 1 2017<br>Clerk of the Superior Court<br>DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo
STREET ADDRESS: 400 County Center, 4th Floor
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME: Hall of Justice and Records

PLAINTIFF/PETITIONER:  Michael McGrath

DEFENDANT/RESPONDENT:  ZTO Express (Cayman) Inc., et al

| | |
|---|---|
| **NOTICE OF RELATED CASE** | CASE NUMBER: 17CIV03805<br>JUDICIAL OFFICER:<br>DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: Guo v. ZTO Express (Cayman) Inc., et al.
    b.  Case number:  17CIV03676
    c.  Court: ☑ same as above
        ☐ other state or federal court *(name and address):*
    d.  Department:
    e.  Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*
    f.  Filing date: August 11, 2017
    g.  Has this case been designated or determined as "complex?" ☑ Yes ☐ No
    h.  Relationship of this case to the case referenced above *(check all that apply):*
        ☑ involves the same parties and is based on the same or similar claims.
        ☑ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
        ☐ involves claims against, title to, possession of, or damages to the same property.
        ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
           ☐ Additional explanation is attached in attachment 1h
    i.  Status of case:
        ☑ pending
        ☐ dismissed ☐ with ☐ without prejudice
        ☐ disposed of by judgment

2.  a.  Title:
    b.  Case number:
    c.  Court: ☐ same as above
        ☐ other state or federal court *(name and address):*
    d.  Department:

FILE BY FAX

17 – CIV – 03805
NORC
Notice of Related Case
668271

*Page 1 of 3*

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Cal. Rules of Court, rule 3.300<br>www.courtinfo.ca.gov |

CM-015

| PLAINTIFF/PETITIONER: Michael McGrath | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ZTO Express (Cayman) Inc., et al | |

2. *(continued)*

  e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

  f. Filing date:

  g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply)*:

    ☐ involves the same parties and is based on the same or similar claims.

    ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    ☐ involves claims against, title to, possession of, or damages to the same property.

    ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 2h

  i. Status of case:

    ☐ pending

    ☐ dismissed ☐ with ☐ without prejudice

    ☐ disposed of by judgment

3. a. Title:

  b. Case number:

  c. Court: ☐ same as above

    ☐ other state or federal court *(name and address)*:

  d. Department:

  e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

  f. Filing date:

  g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply)*:

    ☐ involves the same parties and is based on the same or similar claims.

    ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

    ☐ involves claims against, title to, possession of, or damages to the same property.

    ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

      ☐ Additional explanation is attached in attachment 3h

  i. Status of case:

    ☐ pending

    ☐ dismissed ☐ with ☐ without prejudice

    ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: August 21, 2017

Conrad B. Stephens
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

EXHIBIT C, PAGE 37

**CM-015**

| PLAINTIFF/PETITIONER:  Michael McGrath | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: ZTO Express (Cayman) Inc., et al | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   505 SOUTH McCLELLAND STREET
   SANTA MARIA, CA 93454

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☑ deposited the sealed envelope with the United States Postal Service.
   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):* AUGUST 21, 2017
   b. from *(city and state):* SANTA MARIA, CALIFORNIA

4. The envelope was addressed and mailed as follows:
   a. Name of person served:
      James I. Jaconette
      Street address: 655 West Broadway, Ste 1900
      City: San Diego
      State and zip code: CA, 92101

   c. Name of person served:

      Street address:
      City:
      State and zip code:

   b. Name of person served:
      Stephen J. Oddo
      Street address: 600 B Street, Suite 1900
      City: San Diego
      State and zip code: CA 92101

   d. Name of person served:

      Street address:
      City:
      State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 21, 2017

Carmen Vasques
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

EXHIBIT C, PAGE 38

| Attorney or Party without Attorney (Name/Address) | FOR COURT USE ONLY |
|---|---|
| Conrad B. Stephens<br>STEPHENS & STEPHENS LLP<br>505 S. McClelland St.<br>Santa Maria, CA 93454<br>Telephone: (805) 922-1951<br>State Bar No.: 266790<br>Attorney for: Plaintiff Michael McGrath | **FILED**<br>**SAN MATEO COUNTY**<br>AUG. 2 1 2017<br>Clerk of the Superior Court<br>By _____<br>DEPUTY CLERK |
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA 94063 | |
| Plaintiff   Michael McGrath | |
| Defendant ZTO Express (Cayman) Inc., et al. | |
| **Certificate Re Complex Case Designation** | Case Number<br>1 7 C I V 0 3 8 0 5 |

FILE BY FAX

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1.   In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

    ☒ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

    ☒ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

    ☒ Box 5 – Is [or is not] a class action suit.

2.   This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

17 – CIV – 03805
CRCCD
Certificate Re: Complex Case Designation
668297

CV-59 [Rev. 1/06]

www.sanmateocourt.org

pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision]:

This case is provisionally complex as it involves securities claims.  In addition, it

is being designated as complex due to a large number of parties, the factual and/or

legal issues, and the pursuit of certification of a putative class.

*(attach additional pages if necessary)*

3.   Based on the above-stated supporting information, there is a reasonable basis for the complex case designation or counter-designation [~~or noncomplex case counter-designation~~] being made in the attached Civil Case Cover Sheet.

\*\*\*\*\*

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct and that I make this certification subject to the applicable provisions of California Code of Civil Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated:   August 18, 2017

Conrad B. Stephens
[Type or Print Name]                                    [Signature of Party or Attorney For Party]

CV-59 [Rev. 1/06]                                                          www.sanmateocourt.org

EXHIBIT C, PAGE 40



**SUPERIOR COURT OF SAN MATEO COUNTY**
Civil Department
400 County Center, Redwood City, CA 94063
(650) 261-5100
www.sanmateocourt.org

| | |
|---|---|
| **MICHAEL MCGRATH**<br>Plaintiff (s)<br><br>vs.<br><br>**ZTO EXPRESS (CAYMAN) INC.,**<br>Defendant (s) | **Notice of Complex Case Status Conference**<br><br>Case No.: 17-CIV-03805          Date:   **10/19/2017**<br>                                                      Time:   **9:00 AM**<br>                                                      **Dept. PJ** |

Title:  **MICHAEL MCGRATH  VS.  ZTO EXPRESS (CAYMAN) INC.,, ET AL**

You are hereby given notice of your Complex Case Status Conference.  The date, time and department have been written above.   At this conference, the Presiding Judge will decide whether this action is a complex case within the meaning of California Rules Court ("CRC"), Rule 3.400, subdivision (a) and whether it should be assigned to a single judge for all purposes.

1.  In accordance with applicable **San Mateo County Local Rule 2.30**, you are hereby ordered to:
    a.  **Serve** copies of this notice, your Civil Case Cover Sheet, and your Certificate Re: Complex Case Designation on all named parties in this action no later than service of your first appearance pleadings.
    b.  **Give reason notice** of the Complex Case Status Conference to all named parties in this action, even if they have not yet made a first appearance or been formally served with the documents listed in subdivision (a). Such notice shall be given in the same manner as required for an ex parte application pursuant to CRC 3.1203.

2.  **If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned.  The Order to Show Cause hearing will be at the same time as the Complex Cause Status Conference.   Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.**

3.  An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).   The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunities to decide whether the action meets the definition in CRC 3.400(a).

4.  Any party who files either a Civil Case Cover Sheet (pursuant to CRC 3.401) or counter or joinder Civil Case Cover Sheet (pursuant to CRC 3.402, subdivision (b) or (C)), designating an action as a complex case in Items 1,2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court. The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.  Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues' (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision.

Rev. Jun. 2016

For further information regarding case management policies and procedures, see the court website at
www.sanmateocourt.org

\* Telephone appearances at Complex Case Status Conference are available by contacting CourtCall, LLC, and independent vendor, at least 5 business days prior to the scheduled conference.

### CLERK'S CERTIFICATE OF MAILING

I hereby certify that I am the clerk of this court, not a party of this cause; that I served a copy of this notice on the below date, by placing a copy thereof in separate sealed envelopes addressed to the address shown by the records of this court as set forth above, and by then sealing said envelopes and depositing same, with postage fully pre-paid thereon, in the United States Mail at Red wood City, California.

Date: 8/22/2017

Rodina M. Catalano,
Court Executive Officer/Clerk

By: _____
Becky Krill,
Deputy Clerk

Copies mailed to:

STEPHENS & STEPENS LLP
CONRAD B. STEPHENS
C/O MICHAEL MCGRATH
505 S. MCCLELLAND ST.
SANTA MARIA, CA 93454

Rev. Jun. 2016

EXHIBIT C, PAGE 42

EXHIBIT D

FILED

2017 Aug-29  AM 10:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CITY OF BIRMINGHAM RETIREMENT** | } | |
| **& RELIEF SYSTEM, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | **Case No.:  2:17-CV-1091-RDP** |
| **v.** | } | |
| | } | |
| **ZTO EXPRESS (CAYMAN), INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>ORDER</u>

This is a putative securities class action on behalf of persons who purchased or otherwise acquired the common stock of Defendant ZTO Express (Cayman) Inc. ("ZTO") pursuant and/or traceable to the Company's public offering of approximately $1.4 billion of American Depository Shares ("ADSs") of ZTO. Plaintiff seeks strict liability and negligence remedies under the Securities Act of 1933 (the "1933 Act"). (Doc. # 1-1 at 4). The claims asserted arise under §§11, 12(a)(2) and 15 of the 1933 Act. 15 U.S.C. §§77k, 77l(a)(2) and 77o. That is, Plaintiff's claims arise under federal securities law.

Defendants removed the case, and Plaintiffs have moved to remand it back to state court. The issue is whether the Securities Litigation Uniform Standards Act of Act of 1998 ("SLUSA") grants federal courts exclusive jurisdiction over covered class actions that allege only claims under the 1933 Act. District courts across the nation are sharply divided on this issue. The majority of district courts in the Second, Third, Fourth, Fifth, and Tenth circuits have held that SLUSA grants federal courts exclusive jurisdiction over 1933 Act cases and have denied remand motions after defendants have removed these cases to federal court. However, most of the district courts in the First, Seventh, Ninth, and Eleventh Circuits have remanded the cases back to state

court. Even among the lower courts in some of these circuits, the district court rulings are inconsistent. Brief of Amici Curiae Law Professors in Support of Petitioners, *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 2016 WL 3538388 (U.S.), 4 *cert. granted.* 137 S. Ct. 2325 (2017). Federal appellate courts have not addressed this issue because the district court decisions have all been made on motions to remand cases removed from state court, and federal law generally prohibits appellate court review of remand orders. 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . .").

On June 27, 2017, the United States Supreme Court granted a petition for a writ of certiorari on the following issue: Whether state courts lack subject matter jurisdiction over covered class actions that allege only 1933 Act claims. *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 137 S. Ct. 2325 (2017).

The Supreme Court's decision on this issue may be dispositive of Plaintiff's Motion to Remand which challenges this court's jurisdiction to hear this 1933 Act case. In their Joint Opposition to Plaintiff's Motion to Remand, Defendants make the alternative request that this court stay this case pending the Supreme Court's decision in *Cyan*. "[T]o await a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case" is "at least a good reason" to stay a case, "if not an excellent one." *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist*., 559 F.3d 1191, 1198 (11th Cir. 2009).

The court agrees that it is prudent to await the Supreme Court's guidance. For this reason, Defendants' request for a stay is **GRANTED**. This case is **STAYED** pending the Supreme Court's decision in *Cyan*. The other pending motions – the Motion to Remand (Doc. # 15) and the Defendants' Joint Motion to Transfer Venue (Doc. # 21) -- are denied without prejudice and

may be re-filed (and, if re-filed, will relate back to the date of their original filing) depending upon the answers provided by the Supreme Court in *Cyan.*

      **DONE** and **ORDERED** this August 28, 2017.

 

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE